Next case for argument is 16-2600, Regency Construction v. Department of Agriculture Mr. Willis. I got jumped on one time for trying to start too quickly and I stopped ever doing that again. Your Honor, Matt Willis on behalf of the appellant, Regency Construction Company. Honestly, this is my first time before this court, so if I fall over myself, I apologize. Your Honor, our appeal has two points, but the main focus of our appeal is on the issue of whether or not the four-to-one slope in the project specifications on the side slopes of the prism was a design or a performance specification. Your Honor, as background, unlike what we just heard, it is not nearly so intricate, I won't say simple, but not so nearly so intricate a situation. This is a maintenance dredging contract for a canal in the New Orleans area. This is after Katrina. There's a bunch of stuff, mainly material, silted into the canal. What's your best argument? What's your best case? I mean, the board concluded otherwise. They concluded this was a performance specification and not a design specification. I think that Blake is our best case, Your Honor. I think that Blake... I'm sorry. I didn't mean your best case in terms of a legal case. I meant how he convinced us that it's a design specification as opposed to performance. The engineers for the NRCS designed this project. The testimony was in both testimony in trial and in their interrogatory responses that they made an engineering decision. The slopes would hold at four-to-one. They made that a specific provision in the contract for the final product that had to be reached. I believe that... The degree of the slope was in your obligation, but the method by which you achieved that slope was. That's correct. You were free to use whatever method you wanted to. Yes, Your Honor. Regency was, in fact, free to use whatever... Wasn't that point a performance requirement? Your Honor, respectfully, I believe it creates, like most of these distinctions, a mixed bag. I believe that there's always going to be an element of means and method that's left up to a contractor. There's always going to be a degree of design specification that is designed by typically the government in a procurement contract. I believe that means and methods in this contract were limited in availability. Certainly, you couldn't bring in a hydraulic sea-going or river-going dredge into this area. Certainly, they would never have and then do it by hand. I mean, there was a very limited amount of ways that you could do this other than by drag line or crane. However, yes, they were enabled to pick their own means and methods. However, I think when we look at a case like Blake's, and I already tried to mention, that you're always going to have a mixed bag. Cases are almost always a question of law and fact. Performance of a construction contract is always going to have a certain amount of leniency given toward the contractor and how they pursue the work. I've never seen a heavy construction contract in which the actual means and methods were so specifically designed as to leave no room for the contractor to choose their own methods to some degree. In this case, certainly had our means and methods been the failure, been the basis for the failure of the slopes, we wouldn't have an appeal here today. However, when the design elements of the job, which I believe the slopes to be a design specification, not a performance, when those failed through no fault of the means and methods of the contractor used, and especially when there's no indication that any other means or methods would have been successful and would have avoided the failure of the engineer decisions by the NRCS, I believe that those slopes are in fact a design specification. Can I ask you, the nature of your argument here, which I appreciate and respect, which is kind of like, well, this is a close call. Well, I think you used the term mixed bag. Yes, Your Honor. Doesn't that answer the question given our standard of review of the board's decision? Right? I mean, the standard of review is quite deferential. As to questions of facts. Even if we agree with what you say, I think you acknowledge in your argument that it's a questionable proposition, whichever way you come out. And doesn't that compel us to agree with the board over you? No, Your Honor. Respectfully, I don't agree with that. I believe that while I did use the phrase mixed bag as to the elements of a contract, I'm quite firm in my position that it's a design specification on the slopes. And also the standard of review as to findings of fact certainly are entitled to a great deal of deference to Her Honor who heard the case. However, this court is not bound by her legal decisions. And her legal decision is that the slope is a performance, not a design specification. I believe that's a question of contract interpretation, not of a factual determination before the court. So I believe that is actually being reviewed de novo by this court, not given us any deference to Her Honor. And essentially, Your Honor, I'm not going to belabor the point and talk longer than I have to. I have saved some time for rebuttal, but that is essentially our point. The slopes were designed, they were engineered, the means and methods I concede. There was and always will be some variance allowed to contractors in how they're going to pursue the work. However, in this case, there's no evidence that any other means and methods would have been any more efficient. And certainly not that these means and methods contributed to the failure of the slopes. The slopes failed because they were improperly designed to hold a four-to-one, which they simply did not do. The uncontroverted evidence at trial from geotechnical engineer Traver was that these slopes were going to suffer what he called a sapping mechanism, what the contractor refers to as a sloughing mechanism of failure. But basically, that on one side of the canal, when you cut it to four-to-one, even if you cut it perfectly, it's going to fail. You're going to have material coming into the canal. You're going to have to continue dredging that out. That failure is not the responsibility of the contractor. His means and methods of performance were his own, but they didn't contribute to the failure of the slopes. The slopes were a design feature and therefore under Speran, they come with the inherent representation, the implicit representation that the slope will halt. The slope didn't halt. And because we held that the sides of the prism were a design, not a performance specification, and that the contractor had no responsibility for their failure, nor for their design, that this court should overturn the board's decision on that point and remain back for further findings as to damages as a result of the failed slopes and the sapping mechanism. Thank you. Since you mentioned it's your first time at this court, I will tell you that as one of our colleagues often says, you don't do a bad job when you sit down, when you have nothing more to say. I learned that before another court. Good morning, Mr. Sollitro. Good morning, Your Honor. And I will take your court's advice as well. I will be very brief. May it please the court, Department of Agriculture respectfully requests the decision of the Civilian Board of Contract Appeals be affirmed in its entirety. There are two narrow issues on this appeal. Is this a legal question or a factual question? Whether or not the contract term at issue is a design spec or a performance spec? We've analyzed it as a, we've conceded in our brief that it should be analyzed de novo, as a contract interpretation, despite that some cases say that the termination of whether a specification is a performance spec or a design spec is a mixed question of fact and law. We've analyzed it under a de novo standard. And as counsel acknowledges on page 22 of its brief, it could determine the means and methods of the slope requirement. There's a four-to-one slope requirement that was the end requirement of the channel side slopes. And the contractor was not told how it was to achieve that objective, simply what it was to achieve. The cases most analogous that are cited in the briefs are both the Stuyvesant dredging case, which was this court's case, and the Bean Horizon case. Both those cases support a finding of performance specification for similar requirements. And finally, before leaving it up to the court question, on the design spec issue, it's important to note how the contractor was paid for this particular task order. The contractor was paid for this particular task order on a cubic yard basis, based on the cubic yards of sediment removed from the canal. The estimated amount in the task order, which was bid, was 63,130 cubic yards. The actual amount excavated from the canal was 63,612 cubic yards, nearly 99% accurate. And the 482 cubic yards additional was paid to the contractor in a modification on a per cubic yard basis. So the court should not lose sight of the fact that that was the payment mechanism. Did you argue this in your brief? We did not argue this in our brief. And, Your Honor... We can't hear that argument. If you'd have presented your brief, we can't hear that argument. I understand, Your Honor. And I think the brief showed that it is a performance, showed why it is a performance specification and not a design specification. I'll move on to the second issue, which is the issue of indirect costs relating to this separate delay claim. He didn't even address that in his opening. You really want to spend your time going through something and open the door for him and rebuttal to stand up and now address it? He didn't address it in his reply brief. He didn't address it in his opening argument today. You said you were going to take the Chief Judge's hint about sitting down when you had nothing more to say, and yet now you're going to address an issue nobody ever raised in oral argument or in a reply brief. And, Your Honor, I was simply going to say that he did not address it. You didn't actually follow your own suggestion from the outset. Unless Your Honor has any other questions, I was simply going to say that he did not address it in his reply brief or oral argument. And unless the Court has any questions, the government respectfully requests that the Court affirm the Board's decision in its entirety. Thank you. Thank you, Your Honor. I think I saved four minutes. I won't need them. I'm pleased the Court, the appellee has pointed out two cases which they indicate are supportive to their position. I simply disagree. Bean, Horizon Corporation Weeks Marine, which was a joint venture case of the Engineering Board, it was dealing with the slopes in a dredging contract. However, those were estimated slopes. They were not specified in the contract as in the case before us today. In the case before us today, the design said four to one on the sides of the prism. Got to get it. Bean, that was not the case. And the stupescent is how I've always pronounced it, isn't even talking about the slopes of the prism. It's talking about how much of the accumulated material in the canal need be removed and from what year had that accumulated from. Your Honor, I can point out to the Court that I believe that Blake is a much more dispositive case for our position, that yes, it's always going to be in some ways a mixed bag, but when you have a mixed bag, I think the Court has to, at a minimum, look to see what level of the mixture is law and what level of the mixture is fact. In this case, especially with the question of the side slopes and whether they're designed or whether that they design specification, I believe that the mixture strongly favors this to be a legal determination, which is not granted difference and that the correct contract interpretation is that those side slopes were a design specification for which the contractor should have been compensated. Thank you. Thank you. We thank both sides. The case is submitted.